IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dan E. Persinger, Individually
and as Administrator of the Estate of
John Todd Persinger

        Plaintiff,

v.

Extendicare Health Services,
Inc., and Rocksprings Care, LLC.

        Defendants.

Case No. 2:06-CV-758

Judge Sargus
Magistrate Judge Abel

## OPINION AND ORDER

This is a wrongful death action brought by the estate of John Todd Persinger against defendants Extendicare Health Care Services, Inc. and Rocksprings Care, LLC. Subject matter jurisdiction is alleged under 28 U.S.C. §1332. This matter is before the Court on defendants' August 31, 2007 motion to dismiss for lack of subject matter jurisdiction.

John Todd Persinger suffered head trauma and other injuries in a September 22, 2005 motorcycle accident. At the time, he had been living for about four to six weeks at a friend's trailer in Ohio. He was hospitalized in West Virginia. On November 4, 2005, he was transferred for rehabilitation to Rocksprings Care in Ohio.

Defendants contend that there is not complete diversity of citizenship because the decedent John Todd Persinger and co-defendant Rocksprings Care, LLC were both residents of the State of Ohio. Plaintiff counters that although decedent was a patient at Rocksprings Care when he died, he was a citizen of the State of West Virginia. Finding

for the reasons set out below that John Todd Persinger was a West Virginia citizen at the time of his death, defendants' motion to dismiss is **DENIED**.

**Legal standard.** It is well established that "[s]tate citizenship for purposes of the diversity requirement [of 28 U.S.C. §1332] is equated with domicile." VonDunser v. Aronoff, 915 F.2d 1071, 1072(6th Cir. 1990). In the eyes of the law, domicile is not synonymous with a person's residence. See Kaiser v. Loomis, 391 F.2d 1007, 1009 (6th Cir. 1968). Moreover, a person can only have one domicile at a time for purposes of diversity jurisdiction—"a previous domicile can not be lost until another is adequately established." See Eastman v. Univ. of Michigan, 30 F.3d 670, 672-73 (6th Cir. 1994); see also VonDunser, 915 F.2d at 1072. To establish new domicile, an individual must both reside in the new domicile and intend to remain there. VonDunser, 915 F.2d at 1072. Both of these factors must be met, "either without the other is insufficient." Kaiser, 391 F.2d at 1009. Mere absence from a fixed home, however long or continued, cannot in and of itself effect a change in domicile. Id. (quoting Mitchel v. United States, 88 U.S. 350 (1874)). The initial burden of proving citizenship rests with the party invoking the court's jurisdiction. Once domicile is shown, however, the burden shifts to the defendant to show that domicile has changed by a preponderance of the evidence. Kaiser,391 F.2d at 1010.

The determination of domicile presents a mixed question of fact and law. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 51 (1st Cir. 1992). When reviewing diversity-jurisdiction claims, courts typically take into account a variety of factors indicating the

2

extent of a particular party's ties to the purported domicile. These include, but are not limited to:

> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

Wright, Miller, and Cooper, Federal Practice and Procedure §3612 (2d ed. 1984). No single one of these factors is dispositive, and the analysis does not focus simply on the number of contacts with the purported domicile, but also their substantive nature. See Anderson v. City of Bessememer City, 470 U.S. 564, 573 (1984).

**Facts.** Decedent's parents are residents of West Virginia. Since at least 1995, decedent John Todd Persinger held a valid West Virginia license. He renewed that license five months before his death. (Doc. 22-2, Exhs. 2 and 3.) In July 2005, he purchased a motorcycle and registered it with the West Virginia Department of Motor Vehicles. (Id., Exhs. 4 and 5; Deposition of Alice Marlene Persinger, p. 32.) In his application, Persinger listed a Moundsville, West Virginia address as his permanent place of residence. (Id.) Additionally, when he sold his 1997 sport utility vehicle to a West Virginia Automobile dealer, he listed a Moundsville, West Virginia address as his permanent place of residence. (Id., Exh. 6.) Persinger maintained a bank account at the Moundsville, West Virginia branch of WesBanco; and his account statements indicated that he maintained a residence in Moundsville, West Virginia. (Id., Exh. 7.)

3

On September 22, 2005, John Todd Persinger suffered head trauma, multiple fractures, bruising and other injuries in a motorcycle accident. (Dan E. Persinger's Dep., pp. 50 and 56.) He was taken to Wetzel County, West Virginia Hospital (Doc 22-2, Exh. 9), but then transferred to the West Virginia University Hospital in Morgantown. (Id., Exh. 10.) He remained there seven weeks. (Id., Exhs. 1 and 10.)

On September 27, 2005, just five days after the accident, John Todd Persinger's parents cleared his belongings out of the Ohio trailer where he had been living. The trailer had either been sold or was being foreclosed on. (Alice Marlene Persinger's Dep., p. 36.) He had "made a deal with some guy to live in it for a couple of months." (Dan E. Persinger's Dep., 40.) It was not a permanent residence. (Id. at 40-41.) Decedent lived there alone. (Id. at 42.) Some of Persinger's mail still came to his parents' house. (Alice Marlene Persinger's Dep., p. 36.) Before living in the trailer, decedent lived for a couple of months in Mozart, West Virginia. (Dan E. Persinger's Dep., 41.) Before Mozart, he lived outside Paden City, West Virginia. (Id.) His parents believed their son was moving back home with them after he completed his hospitalization. (Id.; Dan E. Per-singer's Dep., 21.) Persinger's father did testify that before the accident he believed that his son "had plans to go to the southwest" to look for work. (Dan E. Persinger's Dep., 41.)

Decedent did not chose Rocksprings Care for his rehabilitation. A social worker at the West Virginia Ruby Memorial Hospital chose the facility, telling the family that it was easier to get Medicaid in Ohio. (Dan E. Persinger's Deposition, p. 17.) When Per-

4

singer applied for medical assistance from the West Virginia Department of Health and Human Services for November 2005, he listed his place of residence as Moundsville, West Virginia. (Doc. 22-2, Exh. 8.)

Decedent was transferred to the Ohio Rocksprings Care facility November 4, 2005. (Id., Exh. 1.) He died November 10, 2007. He was at the facility because he was weak from the injuries he sustained in the accident. He had lost all mobility. He was conscious and could speak, although he had a tracheotomy. (Dan E. Persinger's Dep., pp. 20-23.)

**Analysis.** Plaintiff has provided evidence that adequately shows that the decedent John Todd Persinger established a number of substantive contacts with the State of West Virginia such that he could legally be considered domiciled in that State. Plaintiff's evidence shows that the decedent considered Moundsville, West Virginia his permanent place of residence.

Defendants rely on the following three facts as evidence that the decedent intended to remain in Ohio and in fact had no intention to return to West Virginia: 1) he was living in a mobile home on a friend's land in Ohio when he suffered the motorcycle accident ; 2) the decedent's father testified that his son was living in Ohio at the time of his accident; and 3) the decedent was transferred back to Ohio to receive care in the co-defendant's nursing home.

The fact that the decedent lived in Ohio in a mobile home parked on a friend's lot prior to his accident is not sufficient to void his West Virginia domicile. Mere absence

5

from a fixed home, however long or continued, cannot in and of itself effect a change in domicile. Kaiser, 391 F.2d at 1009. The temporary nature of the housing, *i.e.* a trailer in which a friend agreed he could live in for a couple of months, further undermines any positive determination that the decedent intended to remain in Ohio. Moreover, the decedent did not take any affirmative steps to re-establish his domicile in Ohio — the decedent did not open any bank accounts in Ohio; he did not transfer his automobile registration; and he did not obtain a fixed permanent residence of his own. Nor is there any evidence that he attempted to join or acquaint himself with any local social or civic organizations. The decedent's actions clearly show that he himself had no intention of making Ohio his place of domicile or remaining in Ohio. The Court concludes that the decedent's actions while in Ohio are more consistent with a person who is on an extended or protracted absence from his domicile.

Dan E. Persinger's testimony that, before the accident, his son made arrangements to live for a couple of months in the Ohio trailer and that he had plans to go to the southwest in search for work prove nothing more than a "floating intention" to live for a short time outside the state of his domicile. A floating intention is an "amorphous desire to relocate from one place to another at an indeterminate future date." Valentin v. Hospital Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001). Such an "indefinite and ambulatory future intention . . . is of no real significance." Hardin v. McAvoy, 216 F.2d 399, 403 (5th Cir. 1954).

6

The fact that the decedent was transferred to a nursing home in Ohio after he received care in West Virginia does not establish that he was a domiciliary of Ohio. Hawes v. Club Ecuestre El Comandante 598 F.2d 698, 702 (1st Cir. 1979). The primary reason for Persinger's transfer to the Rocksprings Care facility was that the rehabilitation he needed was more readily available through Ohio Medicaid. Neither the family nor the decedent had any input into what facility would provide the required after-care and assistance that the he needed — the hospital chose to send him to the Rocksprings Care facility. Thus, the fact that John Todd Persinger died while in an Ohio after-care facility cannot be used to void his West-Virginia domicile. Further, his stay in the care facility was short term. Once he had regained his strength through rehabilitation, he had no place to live in Ohio. He planned to return to his parents' home in West Virginia.

For the reasons stated above, the defendant's motion to dismiss for lack of diversity citizenship (doc. 20) is **DENIED**.

Edmund A. Sargus, Jr.
United States District Judge

Date: 2-11-2008

7